**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **NICK GAWRONSKI** | § | **CIVIL ACTION NO.:** |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| | § | |
| **SUNO INC.** | § | |
| | § | |
| **Defendant** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW plaintiff Nick Gawronski ("Plaintiff"), who files this civil action against defendant Suno Inc. ("Defendant"), and for the causes of action to follow respectfully alleges and states as follows:

**INTRODUCTION**

1.      Artificial intelligence content generation platforms have become a modern cornerstone of cultural expression, education, and professional creation. For individuals seeking careers in specialized digital fields, independent access to these platforms is an absolute necessity. Consequently, when a commercial platform systematically maintains digital architecture that is incompatible with standard assistive technologies, blind individuals face profound professional disenfranchisement, financial injury, and total exclusion from an industry available to their sighted peers.

2. Defendant Suno, Inc. ("Suno") operates an artificial intelligence music generation network via its website and native mobile applications. Suno actively markets its premium monthly subscription plan for approximately $30.00 per month, promising advanced audio functionality to paying consumers. Yet, Defendant continues to maintain a highly inaccessible user interface.

3. This action is brought under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, and the Texas Human Resources Code ("THRC"), Tex. Hum. Res. Code § 121.001 *et seq.*, permanently to end Defendant's discriminatory practices and to obtain complete declaratory relief, permanent injunctive relief, compensatory damages, and reasonable attorney's fees.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiff's claims' arising under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims arising under the Texas Human Resources Code pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal ADA claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(1)-(3) because Defendant conducts substantial business in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District and within the Houston Division of this District. Specifically, Plaintiff is physically located within this District, purchased his commercial subscription from within this District, and continuously experienced severe, localized accessibility barriers while attempting to utilize Defendant's digital platforms within this District.

7.      This Court has personal jurisdiction over Defendant Suno, Inc. because Defendant has purposefully availed itself of the privilege of conducting business within the State of Texas. Defendant purposefully directs its commercial digital platform, marketing campaigns, and subscription services to Texas residents, enters into recurring monthly credit card contracts with Texas citizens, and derives substantial commercial revenue from users residing within this forum. Defendant's continuous and systematic targeting of Texas consumers through subscription sales, marketing, and delivery of digital services within this District further establishes specific personal jurisdiction.

**PARTIES**

8.      Plaintiff Nick Gawronski is a totally blind individual residing in the State of Texas. Plaintiff is an active student pursuing a data-driven education in audio engineering at San Jacinto Community College. Because Plaintiff is totally blind, he cannot operate standard computers, smartphones, or digital interfaces without the assistance of specialized screen access software, which vocalizes visual elements and translates digital code into logical, non-visual navigation parameters.

9.      Defendant Suno, Inc. is a Delaware corporation with a principal place of business located at 125 Cambridgepark Drive, Cambridge, Massachusetts 02140. Defendant actively transacts continuous business throughout the United States, including within the State of Texas, via its public-facing website (suno.com), native iOS mobile application, and native Android mobile application (SUNO).

## **FACTUAL ALLEGATIONS**

10. To participate in his academic curriculum, execute engineering coursework, and achieve professional development parity with his classmates, Plaintiff utilizes industry-standard digital audio workstations ("DAWs") such as Pro Tools alongside his sighted peers.

11. To navigate general digital interfaces, Plaintiff relies on standard screen access software, including JAWS and NVDA on Windows operating systems, VoiceOver on Apple iOS and macOS devices, and TalkBack on Android systems, which vocalizes visual text and layout parameters and enables alternative keyboard navigation controls.

12. Defendant Suno operates an artificial intelligence music generation service via its public website (www.suno.com), a dedicated mobile application for iOS, a dedicated mobile application for Android, and an integrated desktop-class interface known as "Suno Studio" (collectively, the "Digital Platform").

13. The Digital Platform constitutes a "sales establishment," "service establishment," and a place of public accommodation under Title III of the ADA and the Texas Human Resources Code. Defendant sells tiered commercial subscriptions and digital music-generation services directly to the public, including Texas residents, through its website and mobile applications. These activities fall within the statutory categories of "sales establishment" and "service establishment" under 42 U.S.C. § 12181(7)(E)–(F). Defendant sells tiered commercial subscriptions to the public, consisting of a free plan and two paid tiers priced at $10.00 and $30.00 per month, respectively, when billed monthly, or $8.00 and $24.00 per month, respectively, when billed annually. Plaintiff subscribes to Defendant's highest-tier premium plan on a recurring month-to-month basis, at $30.00 per month, to "access" advanced features.

**A. Inaccessible Content Creation, Dialogue Controls, and Interface Toggles**

14.    The core utility of Defendant's Digital Platform is the custom generation of artificial intelligence musical compositions. However, the interactive dialog boxes and adjustment mechanisms required to configure these generations are structurally broken for screen reader users.

15.    In the primary "Create" dialog window across both the website and the mobile applications, Defendant has deployed an abundance of completely unlabeled buttons and interactive controls. Specifically, critical software toggles, such as the button used to select custom generation voices and the switch used to transition the creator interface from "Simple" to "Custom" mode, lack any underlying textual alternative or ARIA (Accessible Rich Internet Applications) labels. These failures violate fundamental accessibility criteria, including the WCAG 2.1 Success Criterion 4.1.2 requirement that all user interface components have names, roles, and values that can be programmatically determined.

16.    When Plaintiff navigates these menus, his screen reader receives no audible feedback, rendering the options completely invisible and forcing him blindly to guess the function of the controls. Furthermore, the selection sliders used to fine-tune musical parameters are improperly coded, rendering them completely unresponsive to standard screen reader adjustment gestures.

**B. Severe Coding Defects in Stem Extraction and Generation Flows**

17.    A primary commercial benefit of Defendant's premium paid subscription is the ability to extract and download "stems"—the raw, individual instrumental and vocal audio tracks of a composition—so they can be imported into external editing software like Pro Tools for professional mixing and academic assignments.

18. Defendant's stem extraction page is highly inaccessible. The dialog interface is cluttered with unlabeled buttons, and Defendant fails to utilize standard ARIA live region tags to communicate processing status to the screen reader. As a result, when a user triggers a stem extraction or music generation, the screen reader receives absolutely zero audio or textual feedback indicating that the track is processing, rendering, or complete. This absence of status messages violates WCAG 2.1 Success Criterion 4.1.3 (Status Messages).

19. The screen reader should say "extraction processing" and/or "extraction complete." If there is a progress bar, it should be spoken, it should say 25%, 50%, 75% complete, etc.

20. Because of this complete lack of interface feedback, Plaintiff is left unaware of whether his command button press successfully activated. This structural coding defect has forced Plaintiff to repeatedly click the execution button, unintentionally generating as many as ten separate duplicate versions of the same track, wastefully consuming his paid subscription credits. Once the track is generated, the complete lack of screen reader status data makes downloading the raw files an unpredictable, "hit-or-miss" endeavor.

### C. Broken Song Customization, Voice Cloning, and Lyric Editing Utilities

21. Defendant markets advanced platform utilities, including a "Lyric Editor" for customizing track text and a "Voice Cloning" feature designed to allow users to record and upload their own voices to sing custom compositions.

22. Both the Lyric Editor and the Suno Studio interface are almost completely unusable with assistive technology across all web and mobile platforms. The text entry, navigation fields, and formatting controls are structurally unmappable by screen reader cursors. Furthermore, the documentation outlining the syntax required to insert structural lyric tags (such as demarcating a "chorus" or "verse") is completely hidden from or unnavigable by assistive technologies.

23.     The voice cloning upload utility is similarly broken. Due to improper coding configuration in the upload and synthesis dialogs, custom voice models fail to process accurately for assistive tech users. Regardless of the configuration parameters Plaintiff attempts to execute via screen reader, the resulting vocal outputs consistently synthesize as an entirely different person, stripping Plaintiff of the advertised functionality of the feature.

**D. Inaccessible Audio Management: The "Cover" and "Trash" Commands**

24.     Defendant offers users the ability to generate a "Cover," or alternate version, of an existing song. However, Defendant's underlying code incorrectly links the interactive elements of the newly generated cover track to the source track.

25.     When Plaintiff attempts to execute core file operations on a covered version of a song, such as downloading the new cover file or moving it to the trash container, the action bypasses the cover track and acts directly upon the original source composition. This critical command defect has caused Plaintiff inadvertently to download the wrong audio files and accidentally delete his original source master tracks.

26.     Furthermore, the interface provides no accessible means to find or audit the trash container itself. The "Trash" directory completely lacks the necessary semantic code, screen-reader labels, or logical navigation paths required for a visually impaired user to locate it. Consequently, once Plaintiff's files are wrongfully discarded, he is entirely unable to independently navigate to the trash to verify their existence or attempt a restoration. Plaintiff has been repeatedly forced to seek the physical assistance of sighted individuals to navigate the app's visual interface and recover his deleted data from the trash.

### E. Unusable Library Engagement, Developer Tools, and Platform Features

27.     Defendant provides standard library engagement elements, including "Like" and "Dislike" buttons, which allow users to curate and catalog music they wish to rehear. These elements do not communicate with assistive technology. When Plaintiff interacts with a "Like" or "Dislike" button, the state of the button changes visually on the screen, but it fails to update its programmatic state or provide text confirmation to the screen reader. Plaintiff is entirely unable independently to discern if a song has been saved to his library without visual verification.

28.     Defendant's advanced utilities are plagued by identical systemic barriers. Defendant offers a developer portal to allow creators to generate API keys for external software integration, as well as a feature allowing users to rate public tracks to earn platform credits.

29.     The rating and key-generation screens completely lack standard HTML radio buttons or accessible form elements. The options are presented as flat, unlinked text blocks, forcing Plaintiff to rely on blind guesswork to select options. Similarly, Defendant's account modification portals are structurally inaccessible, completely preventing Plaintiff from executing a cost-saving transition from his monthly subscription to an annual discounted payment plan without sighted intervention.

### F. High Volatility, Lack of Notice, and Ongoing Discrimination

30.     The discriminatory barriers on Defendant's platform are compounded by its volatile development practices. Defendant continuously deploys backend code updates and interface reconfigurations without performing accessibility regressions or checking for compatibility with standard adaptive controls.

31.     As a direct result of this reckless update pattern, a user interface element that may be partially functional in the morning is frequently broken by an afternoon update, permanently

stripping away assistive capability without warning or announcement. This continuous cycle of breaking accessibility definitions ensures that reliable, independent execution of the platform is completely barred to blind users.

32.     This limitation prevents Plaintiff from the "equal enjoyment" of the app's social and professional features; he is restricted to a passive role of only being able to communicate and interface with a fraction of the utility, while sighted users enjoy the privilege of active, independent browsing and selection, and can freely generate, download, and catalog any audio content of their choosing.

33.     The foregoing factual allegations establish the "how, when, and where" of the accessibility barriers Plaintiff encountered, which collectively deny him full and equal access to Defendant's online store and services.

34.     Plaintiff remains an active monthly paying member of the Suno community and fully intends to continue using the Digital Platform to pursue his education and professional goals as soon as the accessibility barriers are remediated. However, he is currently deterred from full, autonomous use by the inaccessible interface, which denies him independent use of the platform's core functions.

**G. Defendant's Actual Knowledge and Deliberate Indifference**

35.     Defendant is a sophisticated commercial operator with millions of digital transactions and possesses full knowledge of its legal obligations under the ADA. Plaintiff has repeatedly escalated these exact structural violations directly to Defendant's corporate offices and engineering teams.

36.     Specifically, Plaintiff sent formal, written technical notice detailing these severe access barriers via electronic transmission directly to Defendant's technical support channels. To

ensure delivery, Plaintiff additionally utilized postal mail services via LetterStream to deliver a physical copy of the notice directly to Defendant.

37. Defendant possessed actual notice of these widespread violations. Defendant's technical staff and engineering leadership directly responded to Plaintiff in writing, explicitly admitting to the systemic programming deficiencies and stating that they were "aware of the problem" and needed to perform "a much better job with it in [the] UI."

38. Despite this explicit acknowledgment from engineering leadership, Defendant has completely ignored Plaintiff's formal follow-up inquiries and has failed to execute meaningful code remediation over a period exceeding a year. Instead, Defendant merely issued Plaintiff a temporary, one-month complimentary credit to its premium "Pro Plan." Because the underlying system architecture remained structurally broken, Plaintiff was entirely unable to utilize the features of the credited plan.

39. Defendant's ongoing failure to remediate these known barriers while continuously collecting monthly subscription fees represents a policy of deliberate indifference to the civil rights of blind individuals, causing Plaintiff ongoing economic loss, severe frustration, and systemic exclusion from a digital platform available to his sighted peers.

## FIRST CAUSE OF ACTION
## VIOLATION OF ADA TITLE III, 42 U.S.C. §§ 12181 *et seq.*

40. Plaintiff realleges and incorporates by reference all the allegations set forth above.

41. Under 42 U.S.C. § 12182(a), "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."

42. Under 42 U.S.C. § 12182(b)(2)(A)(ii), unlawful discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications

are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities . . . "

43.    Unlawful discrimination under the ADA further includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . . " pursuant to 42 U.S.C. § 12182(b)(2)(A)(iii).

44.    Pursuant to 28 C.F.R. § 36.303(c), auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.

45.    Under 28 C.F.R. § 36.303(b)(2), Federal regulations explicitly state that the "term 'auxiliary aids and services' includes . . .  screen reader software."

46.    Defendant Suno, Inc. has violated, and continues to violate, the ADA by constructing, deploying, and maintaining a digital audio production platform, commercial user interface, and digital services that are completely inaccessible to the blind and visually impaired who, like Plaintiff, rely on screen-reading technology. Defendant's Digital Platform is a place of public accommodation under Title III because it is a commercial service establishment and sales establishment that offers goods and services (AI music generation, stem extraction, subscription access, and related digital tools) to the public, including residents of Texas.

47.    Due to Defendant's failure and refusal to remove severe digital access barriers and programming defects from its platform, Plaintiff and other blind individuals have been systematically denied equal enjoyment of and access to Defendant's commercial software services, features, advantages, and accommodations.

48.     Specifically, by embedding defective underlying code that breaks interactive elements (the "Cover" and "Trash" commands) and leaves the trash recovery container completely hidden and unmappable via screen-readers, Defendant has failed to make necessary reasonable modifications or provide effective auxiliary aids. This defect actively denies visually impaired creators the full and equal enjoyment of Defendant's software, stripping them of their personal autonomy and forcing them to repeatedly compromise their privacy and independence by seeking the physical assistance of sighted individuals to navigate the visual layout and rescue deleted source master tracks.

49.     Defendant's actions constitute ongoing, intentional discrimination against Plaintiff. Defendant constructed a commercial digital platform that is completely inaccessible to Plaintiff, has actively maintained the platform in this discriminatory form, and has failed to take appropriate remedial actions to correct these architectural software barriers even after being notified of the severe data loss and discrimination such barriers cause.

50.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth therein, Plaintiff is entitled to, and respectfully requests, preliminary and permanent injunctive relief requiring Defendant to remediate its platform to achieve full accessibility.

### SECOND CAUSE OF ACTION
### VIOLATION OF THE TEXAS HUMAN RESOURCES CODE,
### Tex. Hum. Res. Code § 121.001 *et seq.*

51.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

52.     Pursuant to Tex. Hum. Res. Code § 121.001, it is the express policy of the State of Texas to encourage and enable persons with disabilities to participate fully in the social and

economic life of the state, to achieve maximum personal independence, and to fully enjoy and use all public facilities available within the state.

53.     Pursuant to Tex. Hum. Res. Code § 121.003(a), persons with disabilities have the exact same right as persons without disabilities to the full use and enjoyment of public facilities within the State of Texas. Under § 121.002(5), a "public facility" includes any place of public accommodation or commercial enterprise offering goods, services, or advantages to the general public.

54.     As set forth by Tex. Hum. Res. Code § 121.003(d), the discrimination prohibited under Texas state law explicitly includes a refusal to allow a person with a disability to use a public facility, a ruse or subterfuge calculated to prevent or discourage a person with a disability from using a public facility, or a comprehensive failure to make reasonable accommodations in policies, practices, and procedures.

55.     Defendant's digital platform and subscription-based audio production applications constitute a commercial public accommodation and public facility heavily integrated into the digital commerce of the State of Texas.

56.     By introducing a user interface that systematically hides file recovery folders, cross-links separate interactive assets, and deletes the wrong source audio master tracks when utilized via a screen reader, Defendant has utilized a digital ruse or subterfuge calculated to discourage, hinder, and prevent a person with a visual disability from using its public facilities, and has failed to provide required reasonable accommodations.

57.     Pursuant to Tex. Hum. Res. Code § 121.004(b), because Defendant has directly violated the anti-discrimination provisions of Section 121.003, Defendant is deemed as a matter of law to have deprived Plaintiff of his civil liberties.

58.     Accordingly, Plaintiff is fully entitled to maintain an action for statutory and actual damages against Defendant in a court of competent jurisdiction. Pursuant to Tex. Hum. Res. Code § 121.004(b), there is an absolute conclusive presumption of damages in the amount of at least $300 per violation to the person with a disability.

## CONDITIONS PRECEDENT

59.     To the extent necessary, Plaintiff has performed all conditions precedent to bringing this lawsuit and all claims asserted herein as the law requires. Specifically, with respect to Plaintiff's claims under the Texas Human Resources Code alleging failure to comply with Internet website accessibility guidelines, Plaintiff provided written notice to Defendant more than sixty (60) days prior to the filing of this action. Defendant received the notice, responded in writing admitting awareness of the problems, and failed to correct the violations.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for judgment against Defendant Suno, Inc. as follows:

1.     For a declaratory judgment that Defendant has violated, and continues to violate, Plaintiff's civil rights under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 *et seq.*;

2.     For a declaratory judgment that Defendant has violated the statutory provisions of the Texas Human Resources Code, Tex. Hum. Res. Code § 121.001 *et seq.*, thereby depriving Plaintiff of his civil liberties;

3.     For preliminary and permanent injunctive relief pursuant to 42 U.S.C. § 12188(a)(1) and (2), requiring Defendant to take all steps necessary to fully remediate its commercial digital platform and software tools to ensure they are accessible to, and usable by, individuals who are visually impaired, including but not limited to:

a. Ensuring that its entire digital platform, user interface, and music generation software are easily accessible by individuals who are visually impaired and who use computers, including laptops, tablets, and smartphones;

b. Ensuring that individuals who are visually impaired have an equal opportunity to participate in and benefit from the goods, services, facilities, privileges, advantages, and accommodations provided through its digital applications and website;

c. Adopting and implementing comprehensive website and mobile application accessibility policies which ensure that its digital platforms are fully and equally accessible to the visually impaired;

d. Requiring any third-party vendors who participate on or integrate into its platform to ensure that their software and content are fully and equally accessible to the visually impaired;

e. Making publicly available, and providing a direct link on the homepage of its digital platforms, to a statement of Accessibility Policy to ensure that the visually impaired have full and equal enjoyment of its services;

f. Providing mandatory quarterly digital accessibility training to all employees, software engineers, and developers who write or develop programs, user interfaces, or code for, or who publish final content to, its platform, instructing them on how to conform all software architecture with universal accessibility standards to ensure that the visually impaired have full and equal enjoyment; and

g. Conducting mandatory quarterly automated accessibility testing of its entire platform and code repository to actively identify any bugs, broken elements, or instances where the software interface is no longer in conformance with criteria that ensures the visually impaired have full and equal enjoyment.

4.      For an award of statutory damages pursuant to Tex. Hum. Res. Code § 121.004(b), dictated by the absolute conclusive presumption of damages for the deprivation of Plaintiff's civil liberties;

5.      For an award of actual damages according to proof, including compensation for the destruction and permanent loss of Plaintiff's original source audio master tracks caused by Defendant's defective and inaccessible command architecture;

6.      For reasonable and necessary attorneys' fees and expenses pursuant to 42 U.S.C. § 12205 and applicable Texas law;

7.      For all costs of suit incurred herein; and

8.      For a judgment awarding all such other and further relief, both at law and in equity, as this Court deems just, proper, and equitable.

Respectfully submitted,

 -s- *Philip A. Sellers*
Philip A. Sellers
State Bar No. 18015400
Fed. ID 21116
2777 Allen Parkway, Suite 1000
Houston, Texas 77019
Phone: (713) 452-2652
Fax: (832) 201-9259
pas@paslawtx.com
Attorney for Plaintiff
Nick Gawronski